## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MONDO PALLON and MONDO     :
PALLON DEVELOPMENT CORP.,   :     Civil Action No. 04-3625 (JAP)
                              :
        Plaintiffs,        :
                              :
         v.           :
                              :
VINCENT VICTOR ROGGIO and    :
SOVEREIGN BANK, N.A.,        :
                              :
        Defendants.      :
————————————————————:
                              :
ANTHONY Z. EMMANOUIL, et. al.,  :     Civil Action No. 06-1068 (FLW)
                              :
        Plaintiffs,        :
                              :
         v.           :
                              :
VINCENT VICTOR ROGGIO, et. al.,  :
                              :     OPINION AND ORDER
        Defendants.      :
                              :
————————————————————:

## BONGIOVANNI, United States Magistrate Judge

       This matter comes before the Court upon Motion by Gavin Handwerker, attorney for

Defendant, Vincent Victor Roggio seeking to disqualify the law firm of Scarinci and Hollenbeck

from representing Plaintiffs, Mondo Pallon; Mondo Pallon Development, Corp. (hereinafter

"Plaintiffs")[04-3625; Docket Entry No. 54] as well as by a Motion to Disqualify brought by

Donald E. Taylor, Esq., attorney for Defendants, Vincent Victor Roggio, Callie Lasch Roggio,

Noved Real Estate Corp., Gibraltar Stone, Corp., and Gibraltar Granite & Marble, Corp seeking

to disqualify the law firm of Scarinci and Hollenbeck from representing Plaintiffs,  Anthony Z.

Emmanouil, Eugenia K. Emmanouil, Zachary Emmanouil, Esq., and West Belt Auto Supply, Inc., (hereinafter Plaintiffs)[06-1068; Docket Entry No. 4][1].  Plaintiffs oppose said Motion.  For the reasons stated below, Defendants' Motions to Disqualify are GRANTED in part and DENIED in part.

## I.      FACTUAL BACKGROUND

Plaintiffs have instituted these actions against Defendants, Vincent Victor Roggio, Sovereign Bank, N.A., Callie Lasch Roggio, Noved Real Estate Corp., Gibraltar Stone Corp. and Gibraltar Granite & Marble Corp., for fraud, conversion, breach of contract, unjust enrichment, negligence and replevin stemming from a series of alleged misrepresentations and fraudulent statements made by Roggio that allegedly induced Plaintiffs to enter into a series of real estate and other transactions with him.  (Pl.Br. at 3).  Two separate actions were filed against Defendant: the first involves Plaintiffs Mondo Pallon and Mondo Pallon Development, Corp. stemming from primarily real estate transactions [Docket No. 04-3625]; and the second involves Plaintiffs Anthony Z. Emmanouil, Eugenia K. Emmanouil, Zachary Emmanouil, Esq., and West Belt Auto Supply, Inc. stemming from a number of allegedly fraudulent real estate and other transactions [Docket No. 06-1068].

Plaintiff, Zachary Emmanouil (hereinafter "Emmanouil") entered into an attorney-client relationship with Defendant in the fall of 2000.  Id. at 6.  The extent of that attorney client relationship moving forward beyond the initial matter in which Emmanouil was involved is

---

[1] This Motion was filed as part of one set of moving papers that also sought to Dismiss Plaintiffs',  Anthony Z. Emmanouil, Eugenia K. Emmanouil, Zachary Emmanouil, Esq., and West Belt Auto Supply, Inc., Complaint, to Strike the Complaint or the alternative to Request a More Definite Statement of Facts.  The Motion to Disqualify is being decided apart from the other motions.

unclear.  Defendant alleges that Emmanouil acted as his attorney in a number of transactions, including a number implicated in Emmanouil's Complaint.  (Def. Br. #2 at 5).  Plaintiff's brief fails to distinguish those transactions in which Emmanouil represented Defendant from those where he did not.  Although Emmanouil's Certification lists  a number of real estate transactions in which he did not represent Defendant, none of those transactions involved Plaintiff Pallon and are therefore not relevant here.

While the extent of the attorney client relationship is unclear, what is clear, however, is that these complaints have at least one property/transaction  in common. The  Pallon and Mondo Pallon Development Corp.'s Complaint alleges fraud and conversion stemming from a series of real estate transactions, including a proposed venture to rehabilitate and sell for profit a property designated as the "Rumson" property.  The Emmanouil Complaint alleges fraud and conversion regarding the mortgage on the "Rumson" property on behalf of Plaintiff Anthony Emmanouil. (Emmanouil Comp. At ¶¶ 147-151).   Since Plaintiffs have failed to provide evidence that Emmanouil was not privy to confidential information through his relationship with Defendant, the Court finds for purposes of deciding these motions to disqualify, that a presumption exists that confidential information was exchanged.  See Reardon v. Marlayne, 416 A.2d 852, 859 (N.J. 1980).

Following Emmanouil's retention of Scarinci and Hollenbeck in his case [Docket No. 06-1068], Defendants filed  Motions to Disqualify Scarinci and Hollenbeck as counsel for Plaintiffs in both actions.  Defendants contend that Scarinci and Hollenbeck, through Emmanouil, improperly received confidential information in violation of the Rules of Professional Conduct 1.6 and 1.9 and that the firm has an imputed conflict of interest in violation of Rule 1.7, 1.10 and

8.4.  Plaintiffs contend that Roggio's allegedly fraudulent actions eliminate any duty of confidentiality on the part of Emmanouil and any information disclosed to Scarinci and Hollenbeck is not bound by the attorney client privilege.  Plaintiffs further contend that disqualification of Scarinci and Hollenbeck is extreme given the circumstances and contrary to public policy.

## II.    **PROCEDURAL HISTORY**

Plaintiffs Mondo Pallon and Mondo Pallon Development instituted an action against Defendants Vincent Victor Roggio and Sovereign Bank, N.A. on August 5, 2004, for fraud, conversion, breach of contract, replevin and unjust enrichment.  Scarinci and Hollenbeck entered an appearance on February 22, 2006, on behalf of Plaintiffs Mondo Pallon and Mondo Pallon Development.[2]  Plaintiffs Anthony Z. Emmanouil; Eugenia K. Emmanouil; Zachary Emmanouil, Esq.; and West Belt Auto Supply, Inc. instituted their action against Defendants Roggio, Callie Lasch Roggio, Noved Real Estate Corp., Gibraltar Stone Corp. and Gibraltar Granite & Marble Corp. on March 7, 2006, for fraud, conversion, breach of contract, replevin and unjust enrichment.  Plaintiffs Anthony Z. Emmanouil; Eugenia K. Emmanouil; Zachary Emmanouil, Esq.; and West Belt Auto Supply, Inc. were represented by Scarinci and Hollenbeck from the outset of their action.

Defendant filed a Motion to Disqualify Scarinci and Hollenbeck on April 25, 2006, in the Pallon matter [Docket No. 04-3625].  A Motion to Disqualify Scarinci and Hollenbeck was also filed on behalf of all Defendants in the Emmanouil matter [Docket No. 06-1068] on April 25,

---

[2] Previous counsel for Plaintiffs Mondo Pallon and Mondo Pallon Development, Corp. was permitted to withdraw as counsel on December 22, 2005.

2006.  The Court will consider the Motions to Disqualify jointly.

III.    **STANDARD OF REVIEW**

The United States District Court for New Jersey has adopted the Rules of Professional Conduct for the State of New Jersey pursuant to L.Civ.R 103.1(a).  Generally speaking, motions to disqualify are viewed with disfavor as disqualification is a drastic remedy with broad, sometimes devastating implications. Carlyle Towers Condominium Ass'n v. Crossland Sav., 944 F.Supp. 341, 345 (D.N.J.1996).  Although doubts are to be resolved in favor of disqualification, a party seeking to disqualify counsel carries a heavy burden and must satisfy a high standard of proof.  Id.

IV.    **ANALYSIS**

A.    **Scarinci and Hollenbeck are Disqualified as Counsel for Mondo Pallon; Mondo Pallon Development, Corp.; Anthony Z. Emmanouil; Eugenia K. Emmanouil; and West Belt Auto Supply, Inc. for Assisting Emmanouil in Violating the Rules of Professional Conduct**

Scarinci and Hollenbeck knowingly assisted or induced Emmanouil in violating the Rules of Professional Conduct, and therefore, they are disqualified from representing all Plaintiffs in this matter other than Zachary Emmanouil.  Rule of Professional Conduct 8.4 states that, "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or to do so through the acts of another; .... [or to] (d) engage in conduct that is prejudicial to the administration of justice ..."  R.P.C. 8.4.  The Rules of Professional Conduct impose duties upon attorneys in the treatment of their former clients. The actions of Scarinci and Hollenbeck, through their representation of Emmanouil and all other Plaintiffs in this action against a former client of Emmanouil, knowingly assisted or

-5-

induced Emmanouil to violate the Rules 1.6,1.9(a) and 1.9(c).

### 1. Emmanouil revealed confidential information to Scarinci and Hollenbeck in violation of Rule 1.6

Emmanouil revealed information to Scarinci and Hollenbeck in violation of Rule 1.6. The Rules of Professional Conduct impose a duty of confidentiality upon attorneys in connection with information obtained as a result of representation of their clients. Greig v. Macy's Northeast, Inc., 1 F.Supp. 397, 399-400 (D.N.J.1998). Rule 1.6 states in pertinent part:

> (a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out representation, and except as stated in paragraphs (b), (c), and (d)
> ....
>
> (d) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:
>
>> (1) to rectify the consequences of a client's criminal, illegal or fraudulent act in the furtherance of which the lawyer's services had been used;
>>
>> (2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, or to establish a defense to a criminal charge, civil claim or disciplinary complaint against the lawyer based upon the conduct in which the client was involved ....
>> R.P.C. 1.6.

The Supreme Court of New Jersey has frequently emphasized the importance of this duty of confidentiality and that it is "basic to the legitimate practice of law." Dewey v. R.J. Reynolds Tobacco Co., 536 A.2d 243 (D.N.J. 1988)(quoting Reardon, 416 A.2d at 857 (N.J. 1980)).

Although R.P.C. 1.6 does not permit a lawyer to reveal information which is otherwise protected by the duty of confidentiality, limited exceptions do exist. A lawyer's ability to reveal

confidential information to establish a claim or defense under Rule 1.6 extends only to the extent necessary to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the former client.  Greig, 1 F.Supp. at 400.  However, a lawyer must "make every effort practicable to avoid unnecessary disclosure of information relating to representation." Circle Chevrolet v. Giordano, Halleran & Ciesla, 662 A.2d 509, 515 (N.J. 1995)(overruled on other grounds by Olds v. Donnelly, 696 A.2d 633 (N.J. 1997)).  Thus, the fact that Emmanouil brought an action against Roggio does not completely absolve Emmanouil from any further obligation to maintain Roggio's confidences.  It merely permits Emmanouil to reveal such information as is reasonably necessary to support his claim.  Other than the information which falls within this window, there is a continuing obligation owed by an attorney to his former client to maintain confidentiality.  The Court finds that implicit within this duty to maintain confidentiality is a duty not to disclose confidential information to third parties in a direct adversarial relationship to Roggio, Emmanouil's former client.

Further, while Emmanouil's actions do not reflect the standard side-switching attorney in which Rule 1.6 is typically implicated, the concerns and issues raised are analogous and the present action should be governed by its reasoning. A side-switching attorney is one who formerly represented a client in a matter and subsequently undertakes representation, or affiliates himself with a firm that has undertaken representation, of an adversary in a related matter.  Id. at 401.  "At the heart of every side-switching attorney case is the suspicion that by changing sides, the attorney has breached a duty of fidelity and loyalty to a former client, a client who had freely shared with the attorney secrets and confidences with the expectation that they would be disclosed to no one else."  Cardona v. General Motors Corp., 942 F.Supp. 968, 975 (D.N.J.1996).

A former client must accept the fact that confidences will be revealed to some extent if the former client becomes involved in an action with his former attorney, more so when the basis of the action is the subject of the former representation.  However, a former client should not be forced into a situation where confidences are revealed to his adversaries, who are still involved in a pending litigation and whose knowledge of his confidences would cause great harm, as is clearly the case in this instance.  As stated above, the duty of confidentiality does not prohibit an attorney from pursuing an action against a former client.  The attorney, however, must not reveal confidential material beyond that which is necessary to support his claim.  Part of the duty of confidentiality is the expectation that a former attorney will protect confidences from any third party adversary who could use those confidences to the former client's detriment.  In this case, even though Emmanouil may reveal any confidential information necessary to support his claim against Roggio, he does not have free reign to reveal all confidential information, especially to his former client's adversaries under the guise of ongoing litigation.

Plaintiffs seek to justify Emmanouil's presumed disclosure by attempting to invoke the crime-fraud exception to the duty of confidentiality.  Emmanouil contends that the crime-fraud exception eliminated any duty under Rule 1.6 which Emmanouil may have owed to Roggio. This Court finds, however, that based upon the facts provided, the crime-fraud exception is not applicable.  Although a lawyer may reveal confidential information to the extent the lawyer reasonably believes necessary to rectify the consequences of a client's criminal, illegal or fraudulent act in which the lawyer's services had been used,  R.P.C. 1.6(d)(1), this crime-fraud exception only applies when the legal advice "gives direction for the commission of future fraud or crime."  In re Grand Jury Subpoena, 223 F.3d 213, 217 (3d Cir. 2000)(quoting Haines v.

-8-

Liggett Group, Inc., 975 F.2d 81, 90 (3d Cir. 1992)).

To invoke the exception, the party must make a prime facie showing that (1) the client was committing or intending to commit a fraud or crime and (2) the attorney-client communications were in furtherance of that alleged crime or fraud.  See In re Grand Jury Subpoena, 223 F.3d at 217 (internal citations omitted).  A prima facie showing requires presentation of "evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime fraud exception were met."  Id. (quoting Haines, 975 F.2d at 95-96).  The prima facie showing must be made by more than through the contested communication.  Ocean Spray Cranberries v. Holt Cargo Systems, 785 A.2d 955, 959 (N.J.Super. 2000).

The crime-fraud exception does not apply in this case.  Application of the exception requires a preliminary finding of criminal or fraudulent conduct and that Emmanouil's actions were in furtherance of the crime or fraud.  Plaintiffs have not proffered evidence in their opposition to the motion to disqualify to support such a finding nor did they request or seek a determination from this Court on the application of the crime-fraud exception before Emmanouil revealed confidential information to Scarinci and Hollenbeck.   Plaintiffs cannot now invoke the crime-fraud exception after confidential information has already been revealed to third parties. The crime-fraud exception is not a tool to justify disclosure after the fact.  Since Plaintiffs did not raise the crime-fraud exception before revealing the information or provide the necessary proof for this Court to determine the applicability of the exception, it does not apply and Emmanouil is

still bound by the duty of confidentiality.[3]

Emmanouil may  reveal otherwise confidential information only as far as that necessary to support a claim or defense that he has on his own behalf against his former client. Furthermore, Emmanouil must take the necessary steps to insure that his former client's confidential information is not disclosed to third parties, just as he would if he were not involved in the litigation.  By retaining Scarinci and Hollenbeck, Emmanouil failed to take the steps necessary to insure his former client's confidentiality beyond his own litigation.  Emmanouil's failure is contrary to Rule 1.6.

### 2.  Emmanouil's actions violate Rule 1.9(a) by acting in a way materially adverse to a former client

By revealing Roggio's confidential information to Plaintiffs' counsel, Emmanouil acted in a way materially adverse to a former client in violation of Rule 1.9(a).  While case law that is exactly on point with the facts of this case is limited, the reasoning and logic behind the Rules of Professional Conduct provide guidance.  The Court finds that the substantially related test of Rule 1.9(a) is equally applicable to the instant case.  See Greig, 1 F.Supp. at 402.  The Greig Court applied this rule[4] as a basis to disqualify a firm that represented an attorney in a legal malpractice action brought by a former client.  Id. at 399.  The former client joined the attorney as a defendant in the same civil rights action in which the attorney had represented the former

---

[3] The court makes no finding as to the ultimate application of the crime-fraud exception as this case moves forward.  Further, the court makes no finding as to whether or not Emmanouil breached the attorney-client privilege by revealing Roggio's allegedly confidential information to his attorneys in the first place.  These issues are not before the Court at this time.  The Court's finding is based upon the rebuttable presumption that confidential information exchanged hands.

[4] Greig applied Rule 1.9(a)(1).  Rule 1.9 was amended effective January 1, 2004.  The amendment included the addition of 1.9(c) and 1.9(d) and reorganization and re-numbering of the paragraphs.  The substance of prior Rule 1.9(a)(1) and Rule 1.9(a) is identical.

client.  Id.  The firm was already representing another defendant in the same civil rights action.

Id.  The Court reasoned that the concerns and purpose behind Rule 1.9(a)(1) were implicated and

should apply despite not being a textbook conflict of interest with a former client.  See id. at 402.

> Rule 1.9(a)  provides in relevant part:
>
>> a lawyer who has represented a client in a matter shall not
>> thereafter represent another client in the same or a substantially
>> related matter in which that client's interests are materially adverse
>> to the interests of the former client unless the former client gives
>> informed consent confirmed in writing.
>> R.P.C. 1.9(a).

The New Jersey Supreme Court applies a "substantial relationship" test for determining

disqualification under Rule 1.9(a).  Reardon, 416 A.2d 852 (N.J.1980). Under the substantial

relationship test, the movant must prove (1) the existence of a past attorney client relationship

between the movant and the attorney sought to be disqualified; (2) that the interests of the

attorney's current client are materially adverse to the movant; and (3) that the current

representation involves the same or a matter substantially related to the former representation.

Id.; Host Marriott Corp. v. Fast Food Operators, Inc., 891 F.Supp. 1002, 1007 (D.N.J. 1995);

Bagdan v. Beck, 140 F.R.D. 660, 668 (D.N.J. 1991); G.F. Industries v. American Brands, 245

N.J.Super. 8 (App.Div.1990).  Where the moving party has established that the matters are

substantially related, the court will presume that the attorney has acquired confidential

information from the former client relevant to the current proceeding.  Reardon, 416 A.2d 852,

859.

However, the substantially related test is not implicated until the movant shows that the

"attorney was in a position where he could have received information which his former client

-11-

might reasonably have assumed the attorney would withhold from his present client." <u>Host Marriott</u>, 891 F.Supp. at 1007 (quoting <u>Allegaert v. Perot</u>, 565 F.2d 246, 250 (2d Cir.1977)). Substantially related matters have been interpreted broadly in New Jersey to include matters with related factual and legal issues, as well as an unrelated adverse position taken in connection with a former client.  <u>Kaselaan & D'Angelo Associates v. D'Angelo</u>, 144 F.R.D. 235, 241 (D.N.J.1992).

It is unquestionable that had Emmanouil switched firms and began working with Scarinci and Hollenbeck representing parties adverse to Roggio, the firm would be disqualified.  The appearance of uncertainty exists only because of the unique circumstances of this case. However, the reasoning and concerns of Rule 1.9(a) are implicated by Emmanouil's actions in this case.  Along with Rule 1.6, Rule 1.9(a) addresses the side switching attorney discussed in detail above.  Much like the duty of confidentiality, Rule 1.9(a) aids in maintaining the sanctity of the attorney client relationship and the public's confidence in and perception of the legal system.  Applying the substantially related test under Rule 1.9(a), it is undisputed that an attorney client relationship existed between Emmanouil and Roggio and it is indisputable that Emmanouil's interests are materially adverse to Roggio's.  Finally, Emmanouil was involved as both Roggio's attorney and personally in a number of real estate and other transactions with Roggio, including some of the transactions giving rise to Pallon's cause of action.  Therefore, the matters are clearly substantially related within the meaning Rule 1.9(a).

Where such substantially related matters are present, assertions by Emmanouil that confidences were not disclosed to Scarinci and Hollenbeck are inconsequential.  "The moving party need not demonstrate that an actual breach of confidence occurred before disqualification is

warranted, but 'only a showing of the possibility of such a breach by virtue of the similarity of representations.'" Essex Chemical Corp. v. Hartford Accident and Indemnity Co., 975 F.Supp. 650, 654 (D.N.J.1997)((overruled on other grounds Essex Chemical Corp. v. Hartford Accident and Indemnity Co., 993 F.Supp. 241, 251 (D.N.J.1998)(quoting In re Corn Deriviatives Antitrust Litigation, 748 F.2d 157, 162 (3d Cir.1984)).  In light of the stringent enforcement of the New Jersey Rules of Professional Conduct, the court finds the possibility that Roggio's confidential information has been disclosed to Scarinci and Hollenbeck and finds it appropriate to apply the presumption of Rule 1.9(a). Greig, 1 F.Supp. at 403.  The possibility of such a breach exists by virtue of the similarity of the subject of Emmanouil's representation of Roggio and the subsequent causes of action.  Essex Chemical Corp., 975 F.Supp. at 654 (quoting In re Corn Deriviatives Antitrust Litigation, 748 F.2d at 162).  Further, as stated above, the crime-fraud exception is inapplicable under the facts presented and does not rebut the presumption that confidential information was disclosed in violation of Rule 1.9(a).

### 3.  Emmanouil violated Rule 1.9(c) by disclosing information to the disadvantage of Roggio

Emmanouil disclosed information to the detriment of Roggio in violation of Rule 1.9(c). As an extension of the duty of confidentiality outlined in Rule 1.6 and the conflict of interest of Rule 1.9(a), Rule 1.9(c) prohibits a former attorney from using information obtained through the attorney client relationship against the former client.  Rule 1.9(c) provides:

> a lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> > (1) use information relating to the representation to the disadvantage of the former client except as these Rules

> would permit or require with respect to a client, or when
> the information has become generally known; or
>
> (2) reveal information relating to the representation except
> as these Rules would permit or require with respect to a
> client.  R.P.C. 1.9(c).

Rule 1.9(c) is broader than the protection afforded by the duty of confidentiality and is not limited to confidential information.  See <u>Steel v. General Motors Corp.</u>, 912 F.Supp. 724, 738 (D.N.J.1995).  However, Rule 1.9(c) does not apply to information that is "generally known." "Generally known" does not only mean that the information is of public record.  See <u>State v. Irizarry</u>, 271 N.J.Super. 577, 595 (App.Div.1994).  The information must be within the basic understanding and knowledge of the public.  The content of form pleadings, interrogatories and other discovery materials, as well as general litigation techniques that were widely available to the public through the internet or another source, such as continuing legal education classes, does not make that information "generally known" within the meaning of Rule 1.9(c).  See <u>Steel</u>, 912 F.Supp. at 739(holding that General Motors, Corp.'s litigation techniques, content of form pleadings, and other trial strategies, while widely known to attorney's involved in similar cases against General Motors, the information was not generally known within the meaning of Rule 1.9(c)).

Roggio contends that Emmanouil provided information to Scarinci and Hollenbeck that he only could have obtained through his attorney client relationship with Roggio.  Such information, while possibly within the knowledge of anyone who may have dealt with Roggio, is certainly not generally known.  Unlike Rule 1.9(a), 1.9(c) is not limited to a former attorney representing a new client in an adversarial relationship with a former client.  Rule 1.9(c) extends

to the revelation of information obtained through the attorney client relationship to any third party to the detriment of the former client, regardless of the former attorney's relationship with that third party.  Moreover, in order for Scarinci and Hollenbeck to properly and zealously represent the other Plaintiffs' interests against Roggio, they would be ethically required to use the information obtained through Emmanouil to the detriment of Roggio.  Emmanouil's actions clearly violated Rule 1.9(c).

As stated above, Scarinci and Hollenbeck knowingly assisted or induced Emmanouil to violate Rules 1.6, 1.9(a) and 1.9(c) through their representation of Emmanouil and all other Plaintiffs in a direct adversarial relationship with Emmanouil's former client.  See R.P.C. 8.4.  When Emmanouil revealed the information regarding Roggio to his attorneys, he knew or should have known that Scarinci and Hollenbeck would use this information to benefit the firm's other clients involved in related lawsuits against Roggio.  Emmanouil's actions, through Scarinci and Hollenbeck, violated Rules 1.6, 1.9(a) and 1.9(c).  Scarinci and Hollenbeck's solicitation or even passive acceptance of information regarding Roggio from Emmanouil, in violation of Emmanouil's ethical obligations to Roggio, constitutes a violation of the firm's own ethical obligation under Rule 8.4.  Therefore, Rule 8.4 would mandate that Scarinci and Hollenbeck is disqualified from representing all Plaintiffs other than Zachary Emmanouil, Esq..

### B.   Appearance of Impropriety

Defendants have also alleged that Scarinci and Hollenbeck's representation of the Plaintiffs in this action violates the doctrine of the appearance of impropriety.  The doctrine of the appearance of impropriety provided in essence that an attorney could not undertake certain representations creating an appearance of impropriety, even in the absence of an actual conflict.

See Matter of Petition for Review of Opinion No. 569, 103 N.J. 325, 329-330 (1986).  However, the 2004 revisions to the Rules 1.7 and 1.9 eliminated the appearance of impropriety doctrine.

**V.     CONCLUSION**

For the foregoing reasons, it is on this 23rd  day of August, 2006, hereby

ORDERED that Defendants' Motions to Disqualify are GRANTED in part and DENIED in part; and it is further

ORDERED that Mitchell Pascual, Esq., and the law firm of Scarinci and Hollenbeck are disqualified from representing Plaintiffs Mondo Pallon; Mondo Pallon Development, Corp.; Anthony Z. Emmanouil; Eugenia K. Emmanouil; and West Belt Auto Supply, Inc. in the matters of Mondo Pallon, et.al. v. Vincent Victor Roggio, et. al.  [Docket No. 04-3625] and Anthony Z. Emmanouil, et. al. v. Vincent Roggio, et. al.  [Docket No. 06-1068]; and it is further

ORDERED that Defendants' request to disqualify Mitchell Pascual, Esq., and the law firm of Scarinci and Hollenbeck from representing Zachary Emmanouil, Esq. is DENIED; and it is further

ORDERED that Plaintiffs Mondo Pallon; Mondo Pallon Development, Corp.; Anthony Z. Emmanouil; Eugenia K. Emmanouil; and West Belt Auto Supply, Inc. shall retain new counsel by September 22, 2006.

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**