<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ANTHONY Z. EMMANOUIL et al., : | |
| : | |
| Plaintiffs, : | Civ. No. 06-1068 (GEB) |
| : | |
| v. : | |
| : | **MEMORANDUM OPINION** |
| VINCENT V. ROGGIO et al., : | |
| : | |
| Defendants. : | |

**<u>BROWN, Chief District Judge</u>**

This matter comes before the Court upon the motion of Defendant Concepcion Rojas & Santos, LLP ("CRS") to waive the attorney-client privilege of its adversary Consol Plaintiff/Defendant Vincent V. Roggio ("Roggio") regarding certain communications [Docket # 119]. Roggio opposes CRS's motion [# 122]. The Court has considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the following reasons, CRS's motion will be denied.

**I.  BACKGROUND[1]**

Defendant CRS is a law firm. (CRS Mot. Br. at 1-2.) [# 119] At one point, Plaintiff Zachary Emmanouil, Esq. ("Zachary") was an associate at CRS. (*Id.*) While an associate at CRS, Zachary represented Roggio on certain legal matters. (*Id.*) One of those matters was *Haught v. Biscayne Bay Tower, et al.* (the "*Haught* litigation"), a civil case litigated in Florida

---

[1] The parties are familiar with the factual and procedural background of this case, which has been detailed in various memorandum opinions issued in the three years since the initial complaint was filed. As such, the Court will only recite the information pertinent to the resolution of the present motion.

state court. (*Id.*) In this case, Roggio is suing CRS for legal malpractice on a theory of *respondeat superior*.[2] Specifically, Roggio seeks to hold CRS vicariously liable for Zachary's alleged malpractice while he was an associate at CRS. (*Id.*)

In the present motion, CRS asks the Court to waive Roggio's attorney-client privilege related to communications between Roggio and Zachary during the *Haught* litigation (the "*Haught* communications"). (*Id.* at 2.) CRS argues that the *Haught* communications are potentially critical to CRS's defense and precluding their discovery would be prejudicial to CRS. (*Id.* at 7-10.) Further, CRS asserts that Roggio's malpractice claims against CRS put the *Haught* communications at issue and render them discoverable. (*Id.*) Roggio objects to CRS's motion, and states that the malpractice claims in the complaint against CRS do not relate to the *Haught* litigation, and therefore the *Haught* communications are not at issue. (Roggio Opp'n Br. at 2.) [# 122] As such, Roggio argues that his attorney-client privilege relating to the *Haught* communications should not be waived. (*Id.* at 3-7.)

Shortly before this case was re-assigned to this Court on December 2, 2008, United States District Judge Freda Wolfson, then presiding, addressed legal issues that are similar to those presented by CRS's instant motion. (FLW Mem. Op. 11/5/08) [# 112] On December 21, 2007, Roggio filed a motion to seal judicial proceedings and materials [#88]. In that motion, Roggio argued that privileged information relating to the *Haught* litigation had been presented during a hearing before Judge Wolfson. (*Id.*) Zachary, who was the adverse party in that matter, opposed Roggio's motion [# 90]. Ultimately, Judge Wolfson ordered certain testimony and documents

---

[2] Other claims are asserted by the parties in this complex, consolidated case. Those other claims, however, have no bearing on the resolution of the present motion, and the Court will not discuss them.

relating to the *Haught* litigation sealed. (FLW Order 11/5/08) [# 113]  In doing so, Judge Wolfson concluded that Roggio's malpractice claims do not involve any, "allegations pertinent to Zachary's representation in the *Haught* matter . . . ." (FLW Mem. Op. 11/5/08 at 9.) [# 112]  As such, Judge Wolfson opined that there was no legally sufficient basis to waive the attorney-client privilege held by Roggio relating to the *Haught* communications. (*Id.*)

Having reviewed CRS and Roggio's submissions in the present matter, the Court will deny CRS's motion for many of the reasons Judge Wolfson articulated in granting Roggio's previous motion to seal.

## II.   DISCUSSION

CRS argues that Roggio's attorney-client privilege should be waived regarding the *Haught* communications for the following two reasons: (1) the *Haught* communications are potentially critical to CRS's defense and precluding their discovery would be prejudicial to CRS; (2) Roggio's malpractice claims against CRS put the *Haught* communications at issue and render them discoverable.  The Court finds both arguments unavailing.

In the November 5, 2008, memorandum opinion that addressed Roggio's motion to seal, Judge Wolfson noted:

> Courts have long recognized the attorney-client privilege as one of the few exceptions to the public's right "to every man's evidence." Wachtel v. Health Net, Inc., 482 F.3d 225, 230-31 (3d Cir. 2007) (citation omitted).  The privilege "serves the interests of justice. . .[and] is worthy of maximum legal protection." Rhone-Poulenc Rorer Inc. v. Home Indemnity Co., 32 F.3d 851, 862 (3d Cir. 1994) (citation omitted).  In Wachtel, the Third Circuit underscored the privilege's fundamental importance to the public interest:
>
> > Full and frank communication between attorneys and their clients must be encouraged because the administration of justice in a complex society depends upon the availability of sound legal

> advice, and in turn, the soundness of legal advice depends upon clients' willingness to prsent full disclosure to their attorneys.
>
> Wachtel, 482 F.3d at 231 (citation omitted); Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) (finding that the privilege "promote[s] broader public interests in the observance of law and administration of justice."). The scope of the privilege is quite extensive, covering documents, tangible objects, and statements "conveyed. . .to an attorney in confidence for the purpose of any legal advice." [Haines v. Liggett Group Inc., 975 F.2d 81, 90 (3d Cir. 1992]. As such, the privilege generally does not extend to any advice which is not legal in nature, i.e., business advice, or to communications made in the presence of a third party. Wachtel, 482 F.3d at 231. Additionally, an attorney's obligation to protect his client's confidences is vital to the attorney-client relationship. See Model Rules of Professional Conduct Rule 1.6 (1983); Haines, 975 F.2d at 90.

(FLW Mem. Op. 11/5/08 at 5-6.) [# 112]  Further:

> . . . [T]he attorney-client privilege rests solely with the client, and only the client may waive it. Haines, 975 F.2d at 90. "There is authority for the proposition that a party can waive the attorney client privilege by asserting claims or defenses that put his or her attorney's advice in issue in the litigation." Rhone-Poulenc Rorer Inc., 32 F.3d at 863. In Rhone-Poulenc Rorer Inc., the Third Circuit gave two examples where the court may find the attorney-client privilege has been impliedly waived by the client as to certain communications: (1) by filing a malpractice action against the lawyer; and (2) "by asserting reliance on the advice of counsel as an affirmative defense." Id. Recently, the Second Circuit narrowed the applicability of the implied waiver of the attorney-client privilege in instances where the attorney's advice is at issue:
>
>> According to Hearn, an assertion of privilege by one who pleads a claim or affirmative defense "put[s] the protected information at issue by making it relevant to the case."Hearn, 68 F.R.D. at 581. But privileged information may be in some sense relevant in any lawsuit. A mere indication of a claim or defense certainly is insufficient to place legal advice at issue. The Hearn test presumes that the information is relevant and should be disclosed and would open a great number of privileged communications to claims of at-issue waiver. Nowhere in the Hearn test is found the essential element of reliance on privileged advice in the assertion of the claim or defense in order to effect a waiver. We hold that a party must rely on privileged advice from his counsel to make his claim or defense.

> In re County of Erie, No. 07-5702, 2008 WL 4554920, at *5-6 (2d Cir. Oct. 14, 2008) (emphasis in original). However, even in instances where a client has waived the attorney-client privilege, the waiver is limited to the specific communications and disclosure at issue in the claim or defense. Rhone-Poulenc Rorer Inc., 32 F.3d at 863 ("In these cases, the client has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue. Courts have found that by placing the advice in issue, the client has opened to examination facts relating to that advice."); see also Livingstone v. North Belle Vernon Borough, 91 F.3d 515, 537 (3d Cir. 1996). Limiting waiver to the relevant communications "leav[es] to the client the decision whether or not to waive the privilege by putting the attorney's advice in issue. . .[and] provide[s] certainty [that] the client's confidential communications will not be disclosed unless the client takes an affirmative ste to waive the privilege." Rhone-Poulenc Rorer Inc., 32 F.3d at 863.

(FLW Mem. Op. 11/5/08 at 5-6.)

The foregoing standard also frames this Court's analysis of the issues presented by the instant motion. Having applied that standard to the facts of this case, the Court concludes that Roggio's attorney-client privilege related to the *Haught* communications should not be waived.

In their various submissions, the parties do not dispute that Roggio's complaint does not allege that Zachary committed malpractice during the *Haught* litigation. Indeed, in his opposition brief, Roggio reinforces this point and states that he, "has never raised any malpractice claims against Zachary and his law firm(s) regarding the representation of Roggio in the Haught matter, and [Roggio] does not do so now. The claims in Roggio's Complaint against CRS in no way touch upon the Haught litigation." (Roggio Opp'n Br. at 2.) [# 122]

It appears instead that CRS bases its motion primarily on a single line in a report submitted by Roggio's liability expert, David B. Rubin, Esq. (CRS Mot. Br. at 5.) [# 119] In the report at issue, Mr. Rubin states that:

> At several points in his deposition in this case and his Florida bankruptcy proceedings, Zachary suggested that West Belt was just one of numerous business

5

> transactions and relationships he engaged in with Roggio, none of which involved a lawyer client relationship.  This allegation, even if true, does nothing to extricate Zachary from his ethical dilemma. *Assuming for argument's sake that he were simply engaging in arm's length business dealings with Roggio on behalf of his family and himself, they still spun out of Zachary's attorney-client relationship with Roggio in the Haught matter.*

(Rubin Report at 22-23.) (emphasis added by the Court)  CRS excerpts the italicized language above in its moving brief, and argues that clause puts the *Haught* communications at issue in this case.

In response to CRS's argument, Roggio asserts that excerpt was taken out of context by CRS in its brief.  (Roggio Opp'n Br. at 6.) [# 122]  Roggio argues that Mr. Rubin's statement, when read in context, stands for nothing more than the proposition that certain of Zachary's business dealings were unethical because Zachary represented Roggio in the *Haught* litigation. (*Id.*)  In further support of this contention, Roggio submitted the Declaration of David B. Rubin, Esq., in which Mr. Rubin clarifies the meaning of the relevant language in his report.  Mr. Rubin declares:

> My reference to these other transactions having "spun out of" the *Haught* attorney-client relationship was merely in the sense that it afforded [Zachary] the initial entree to Mr. Roggio that later ripened into the unrelated business dealings that are the subject of the present litigation.  It was how they first came to know each other, nothing more.

(Rubin Decl. at ¶ 4.) [# 122]

Having considered all of the parties' submissions, the Court agrees with Roggio that when Mr. Rubin's report is read in its proper context, it does not put the *Haught* communications at issue.  Further, as Judge Wolfson did in her November 11, 2008, memorandum opinion, this Court concludes that Roggio's malpractice claims do not involve any, "allegations pertinent to

6

Zachary's representation in the *Haught* matter . . . ." (FLW Mem. Op. 11/5/08 at 9.) [# 112] Simply put, the record indicates that the *Haught* communications have no apparent relevance to Roggio's claims against CRS. Thus, the *Haught* communications are not essential to CRS's defense, and precluding their discovery is not prejudicial to CRS.

In sum, this Court concludes that CRS has not provided a sufficient basis for this court to waive Roggio's attorney-client privilege relating to the *Haught* litigation. As such, CRS's present motion will be denied.

### III.    CONCLUSION

For the foregoing reasons, CRS's motion to waive attorney-client privilege [#119] will be DENIED. An appropriate form of order accompanies this memorandum opinion.

Dated: April 6, 2009

                      /s/ Garrett E. Brown, Jr.
                     GARRETT E. BROWN, JR., U.S.D.J.