NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ANTHONY Z. EMMANOUIL, ET AL., | : | |
| Plaintiffs, | : | |
| v. | : | |
| VINCENT V. ROGGIO, ET AL., | : | |
| Defendants. | : | Civ. No. 06-1068 (GEB) |
|  | : | **MEMORANDUM OPINION** |
| VINCENT ROGGIO, | : | |
| Plaintiff, | : | |
| v. | : | |
| ANTHONY Z. EMMANOUIL, ET AL., | : | |
| Defendants. | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon the motion for summary judgment filed by Defendant Concepcion Rojas & Santos, LLP ("CRS"). (Doc. No. 152.) Plaintiff Vincent Roggio ("Roggio") opposes CRS's present motion.[1] (Doc. No. 160.) The Court has considered the

---

[1] On June 15, 2009 – the same date CRS filed the present motion – Roggio also filed a motion for summary judgment. (Doc. No. 154.) Roggio's brief in support of that motion focuses almost exclusively on the claims made against him in a complaint filed by other parties in this consolidated litigation. (Roggio Mot. Summ. J. Mot. Br.; Doc. No. 154.) In the preliminary statement of his moving brief, however, Roggio does state that he, "also seeks partial summary judgment as to Count VIII of his own Complaint, which consists of a malpractice and breach of fiduciary duty claim against [CRS]." (*Id.* at p. 1.) Despite that assertion, Roggio makes no affirmative argument in his submissions that supports his purported summary judgment motion

parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78. Having done so, the Court will grant CRS's motion for the reasons that follow.

**I.     BACKGROUND**[2]

    **A.     Relevant Undisputed Facts**

CRS was a law firm formed on January 1, 2002, under Florida law that maintained its office and principal place of business in Coral Gables, Florida.  (Parties' 56.1 at ¶¶ 1-3; Docs. No. 152-21, 160-1.)  CRS dissolved on December 31, 2003.  (*Id.* at ¶ 1.)  During its existence, CRS employed Zachary Emmanouil, Esq. ("Zachary") as an associate from January 1, 2002, until May 15, 2003, when CRS changed Zachary's employment status to "of counsel."[3]  (*Id.* at ¶¶ 7, 11, 12.)

The relationship between Roggio, Zachary, and CRS stems from civil litigation in Florida state court that is unrelated to this case (hereinafter the "*Haught* matter").  (*Id.* at ¶¶ 16-45.) Roggio was the "contact person" for Warren Haught, plaintiff in the *Haught* matter.  (*Id.* at ¶ 17.)

---

against CRS.  As such, the Court will rely upon the parties' submissions that specifically regard CRS's present motion.  Ultimately, given the Court's disposition, whether Roggio has moved for summary judgment against CRS is a moot point.

[2] The present motion addresses only one claim among many in this complex consolidated case.  The Court concludes that the parties' submissions address various facts and legal issues that are not relevant to the resolution of that claim.  This memorandum opinion will discuss only the facts, procedural history, and legal issues that are relevant.

[3] Zachary is a central figure in this litigation and his alleged actions largely give rise to Roggio's claim against CRS.  Despite that, Zachary was dismissed as a party to this case on October 10, 2006, because of his then-pending bankruptcy petition.  (Doc. No. 23.)  As a result, Roggio's operative pleading makes no claims against Zachary directly.  (Doc. No. 139.)  The Court notes that on August 14, 2009, Roggio filed a motion to amend/correct pleadings.  (Doc. No. 176.)  Roggio's proposed amended complaint contained renewed causes of action against Zachary.  (*Id.*)  Roggio's motion to amend/correct pleadings, however, was denied by the Court on November 25, 2009.  (GEB 11/25/09 Mem. Op. & Order; Docs. No. 195, 196.)

Upon its formation in January, 2002, CRS assumed representation of Haught and apparently Roggio in the *Haught* matter. (*Id.* at ¶¶ 27-29.) On February 13, 2002, CRS filed a motion in Florida state court to withdraw as counsel for both Haught and Roggio in the *Haught* matter. (*Id.* at ¶ 30.) The judge presiding over the *Haught* matter granted CRS's motion on February 20, 2002, and both Haught and Roggio were notified of CRS's withdrawal from that case. (*Id.* at ¶¶ 31, 34.) Subsequently, Roggio retained the law firm of Lawrence J. Roberts & Associates, P.A., which became counsel of record for Roggio in the *Haught* matter on July 9, 2002. (*Id.* at ¶ 38.) Ultimately, CRS billed $9,152.17 for the services it rendered in connection with the *Haught* matter and Roggio settled that debt via three separate payments to CRS that aggregated $9,152.17. (*Id.* at ¶ 36.)

While the *Haught* matter apparently forms the only undisputed link between Roggio and CRS, it is just one component of the complicated relationship between Roggio and Zachary. Beginning roughly in 2002, Zachary traveled to New Jersey on a frequent basis to visit Roggio and his wife.[4] (*Id.* at ¶ 46.) In 2002, Zachary and Roggio worked together to buy an airport operation in Tampa, Florida. (*Id.* at ¶ 48.) On May 22, 2003, Roggio, Zachary, and a third party formed Gibraltar Stone Corporation ("Gibraltar Stone"), a Delaware corporation. (*Id.* at ¶ 52.) Also on May 22, 2003, Noved Materials Corporation, a Delaware corporation, was formed in connection with the business of Gibraltar Stone for the purpose of transporting granite slabs from Brazil to Houston, Texas. (*Id.* at ¶ 52.) Thereafter, on February 25, 2004, Gibraltar Granite &

---

[4] The Court has noted that CRS dissolved on December 31, 2003. Therefore, events that took place after December 31, 2003, are not strictly relevant to Roggio's malpractice claim against CRS. The Court will, however, discuss certain events that occurred after December 31, 2003, which illustrate the relationship between Zachary and Roggio.

3

Marble ("Gibraltar Granite"), a Delaware corporation, was formed and was in the business of manufacturing granite and marble countertops for homes and businesses. (*Id.* at ¶¶ 54, 55.) Roggio was the majority shareholder of Gibraltar Granite. (*Id.* at ¶ 56.) Zachary, while not a shareholder or investor in Gibraltar Granite, was the company's sole officer, sole account signor, guarantor of the company's loans, and was involved in the company's day-to-day operations. (*Id.* at ¶¶ 56, 57.)

Additionally, Zachary and Roggio maintained a joint checking account that was used to pay certain expenses of: (1) Zachary; (2) Roggio; (3) various entities in which Roggio had an interest; (4) Anthony Emmanouil, Zachary's father; and (5) West Belt Auto Supply ("West Belt"), a company owned by Anthony Emmanouil. (*Id.* at ¶ 47.) Additionally, between July 16, 2002, and December 22, 2003, a combination of Zachary, Anthony Emmanouil, and West Belt forwarded in excess of $1,000,000 to Roggio. (*Id.* at ¶¶ 64.) CRS asserts that these payments were "for the benefit" of Roggio and various entities controlled by Roggio. (CRS 56.1 at ¶ 64; Doc. No. 152-21.) Roggio counters that "some of the monies were for the benefit of Zachary Emmanouil for investment purposes." (Roggio 56.1 at ¶ 64; Doc. No. 160-1.)

The foregoing events are not the focus of Roggio's malpractice claim against CRS. (Am. Compl. At ¶¶ 124-137, Roggio 56.1 at ¶ 85; Docs. No. 139, 160-1.) Instead, that claim focuses upon a series of events and transactions related to the sale of West Belt. (*Id.*) In late October, 2001, Roggio paid for Zachary to fly to New Jersey and attend a Halloween party at Roggio's home. (Parties' 56.1 at ¶ 68; Docs. No. 152-21, 160-1.) At that time, on October 29, 2001, Roggio and Zachary met to discuss the *Haught* matter. (*Id.*) During that meeting, "Zachary also discussed West Belt Auto Supply, Inc., which was at this time his father's company, and began

4

encouraging me to [consider] buying the company." (*Id* at ¶ 68.) Roggio alleges he entered into an agreement with Zachary in connection with West Belt. (*Id.* at ¶ 69.) Pursuant to that alleged agreement, Roggio asserts that Zachary took various actions including dealing with banks to secure loans, and forwarding certain West Belt corporate documents. (*Id.* at ¶¶ 70-83.) Roggio also alleges that Zachary acted as his attorney during the West Belt transaction and in various other related matters. (Am. Compl. ¶¶ 124-137; Doc. No. 139.) The parties apparently dispute whether Zachary used CRS's offices and machines when taking the aforementioned actions. (*Id.* at ¶¶ 70-83.) It is undisputed, however, that while affiliated with CRS, Zachary was only authorized to use the letterhead, office computers, facsimile, machinery or telephones of CRS for firm work. (*Id.* at ¶ 9.)

The parties agree that, among the numerous fund transfers between Roggio, Zachary, and others, Roggio paid Zachary specifically for legal services rendered on the following five occasions: (1) $5,000 on October 23, 2002; (2) $4,300 on July 29, 2003; (3) $3,000 on August 27, 2009; (4) $4,100 on March 18, 2004; and (5) $500 on March 22, 2004. (*Id.* at ¶ 67.) Each of these sums was deposited into the joint checking account maintained by Roggio and Zachary. (*Id.*) From the parties' submissions, it appears undisputed that, aside from the $9,152.17 Roggio paid CRS for legal services in connection with the *Haught* matter, Roggio was never billed by CRS for any legal services, and Roggio never remitted any payment to CRS in any form. Similarly, it appears undisputed that Roggio never communicated with any partner in the CRS firm after CRS withdrew from the *Haught* matter, and that no contract or retainer agreement between CRS and Roggio was ever executed.

  **B.**  **Relevant Procedural History**

Roggio filed a complaint against various defendants in the District of New Jersey on May 25, 2006.[5] (Verified Compl.; Doc. No. 17-2; Doc. No. 8.)  Federal subject-matter jurisdiction over this case undisputedly exists pursuant to 28 U.S.C. § 1332. (Am. Compl. ¶¶ 1-9; Doc. No. 139.)  Relevant to the present motion, among the defendants named by Roggio in the complaint is CRS. (*Id.* at ¶ 6.)  Roggio alleges that Zachary committed legal malpractice while representing Roggio during the West Belt transaction and in various other related matters. (*Id.* at ¶¶ 124-137.)  Roggio further alleges that Zachary was affiliated with CRS during the time-period when aspects of Zachary's purported malpractice occurred. (*Id.*)  Based on the foregoing allegations, Roggio's complaint lodges a single claim for malpractice and breach of fiduciary duty against CRS on a *respondeat superior* theory. (*Id.*)  That is the only claim against CRS in this consolidated case.

On July 28, 2006, in lieu of an answer, CRS filed a motion to dismiss for lack of personal jurisdiction, or in the alternative, to sever Roggio's claim against CRS and transfer that piece of this case to the United States District Court for the Southern District of Florida. (Doc. No. 16.)  In support of that motion, CRS argued that personal jurisdiction does not exist because CRS has insufficient contacts with New Jersey absent Zachary's conduct, which CRS argued should not

---

[5] The original "verified complaint" filed by Roggio on May 25, 2006, was sealed by order of the Honorable John J. Hughes, U.S.M.J. (Doc. No. 8.)  For unknown reasons, the sealed verified complaint is not maintained on CM/ECF or in hard-copy by the Clerk of the Court.  As such, the Court has relied on copies of the May 25, 2006 verified complaint that were submitted by both Roggio and CRS as exhibits during prior motion practice. (Doc. No. 16-3; Doc. No. 17-2.)  The May 26, 2006 verified complaint was superceded by an amended complaint filed by Roggio on May 22, 2009. (Am. Compl.; Doc. No. 139.)  Roggio's amended complaint was filed without opposition, and appears to make only cosmetic changes to the verified complaint.  It is undisputed that the amended complaint does not alter the allegations made by Roggio against CRS in the verified complaint. (Parties' 56.1 at ¶ 84; Docs. No. 152-21, 106-1.)  As such, henceforth the term "complaint" shall refer to the May 22, 2009 amended complaint, which is the operative pleading in this matter.

be attributed to CRS under the circumstances presented.  (*Id.*)  In opposition to that argument, Roggio asserted that personal jurisdiction over CRS does not exist in New Jersey because Zachary was an agent of CRS, or at the very least took actions in New Jersey while cloaked with the apparent authority of CRS.  (Doc. No. 17.)  On October 30, 2007, the Honorable Freda L. Wolfson, U.S.D.J., then-presiding in this case, held oral argument on CRS's motion to dismiss or transfer.  (Tr. Hr'g. FLW 10/30/07; Doc. No. 25.)  After considering the parties' arguments and the record as it then-existed, Judge Wolfson decided that under the applicable legal standard, Roggio had carried his burden and established a prima facie case that Zachary had acted in New Jersey with the apparent authority of CRS.[6]  (*Id.* at p. 50.)  Specifically, Judge Wolfson stated:

> I want to be clear, however, at this point, that these facts, at least at this juncture, would support a prima facie case of apparent agency. But [this decision] is being made on a record where all inferences must be given to Mr. Roggio.  So it is no way a finding as to any later determination that will have to be made either on motion practice or at trial as to whether, indeed, [Zachary] was the agent of [CRS], but solely for jurisdictional purposes and the procedural posture that I have that there only needed to be made a prima facie case with inferences drawn in favor of Mr. Roggio.  With that, I will deny the motion of [CRS] to dismiss for lack of personal jurisdiction.

(*Id.* at p. 50.)  Therefore, Judge Wolfson clearly established that her ruling did not foreclose reexamination of the agency issue later in this case after the conclusion of discovery and the commencement of substantive motion practice.  After so ruling, Judge Wolfson addressed and

---

[6] Judge Wolfson established that her analysis focused on apparent rather than actual authority, and stated: "I view this as an apparent authority situation because the record does not establish to me that there was actual authority for Zachary to be acting on behalf of [CRS] in connection with its dealings with Roggio . . . .  I do not have something specific that would demonstrate that [CRS] was directly aware of work being done for Roggio during any of these time periods beyond the *Haught* matter."  (Tr. Hr'g. FLW 10/30/07 at pp. 43, 44; Doc. No. 25.)

denied CRS's motion to transfer this matter to the Southern District of Florida.  (*Id.* at pp. 50-51.)

Following Judge Wolfson's decision, CRS filed an answer to Roggio's complaint on November 9, 2007.  (Doc. No. 80.)  For roughly the next 18 months, discovery proceeded in this consolidated litigation.  On December 2, 2008, this case was reassigned to the undersigned.  (Doc. No. 114.)  After Roggio filed his amended complaint on May 22, 2009, which CRS timely answered, CRS filed its present motion for summary judgment on June 15, 2009.  (Doc. No. 152.)  In support of that motion, CRS makes the following primary arguments: (1) discovery has established that personal jurisdiction over CRS does not exist in New Jersey; (2) Zachary was not an agent of CRS with regard to the conduct alleged; and (3) Roggio's claims against CRS fail on both substantive and procedural grounds.  (Mot. Br.; Doc. No. 152-20.)  Roggio opposes CRS's present motion and responds to CRS's arguments.  (Opp'n Br.; Doc No. 160.)

## II.    DISCUSSION

### A.    Legal Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist,

the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

    **B.**    **Application**

Applying that standard in this case, the Court concludes that summary judgment for CRS is appropriate because no reasonable finder of fact could decide that Zachary was acting as an agent of CRS at any relevant time. In their briefs, both parties appear to stipulate that no conflict of law exists between the agency law of New Jersey and Florida. (CRS Mot. Br. at p. 12; Doc. No. 152-20: Roggio Opp'n Br. at p. 19.; Doc. No. 160.) Roggio expressly argues that, in the absence of a conflict, the Court should apply New Jersey law. (Roggio Opp'n Br. at p. 19.; Doc. No. 160.) In light of Roggio's argument to this effect, the Court will apply New Jersey agency law to the facts of this case.

At the outset, the Court echos Judge Wolfson's determination at the October 30, 2007 hearing that there is no evidence that Zachary acted with the actual authority of CRS at any relevant time. (Tr. Hr'g. FLW 10/30/07 at pp. 43, 44; Doc. No. 25.) The *Restatement (Third) of Agency* states that, "[w]hen an agent acts with with actual authority, the agent reasonably believes, in accordance with manifestations of the principal, that the principal wishes the agent to so act." *Restatement (Third) of Agency* § 7.04 cmt. b. Judge Wolfson's October 30, 2007 decision, made prior to the conclusion of discovery, is now supported by the post-discovery record that is devoid of evidence that Zachary acted with the actual authority of CRS anytime after the Florida state court granted CRS's motion to withdraw as Roggio's counsel in the *Haught* matter on February 13, 2002. The Court concludes that no reasonable finder of fact

could decide that Zachary was the actual agent of CRS during the events in question, all of which took place after February 13, 2002.

Following that determination, as Judge Wolfson did during the October 30, 2007 hearing, this Court will focus on the question of apparent authority. At the October 30, 2007 hearing, Judge Wolfson applied a FED. R. CIV. P. 12 standard to the record as it then-existed, and determined Roggio had made a prima facie case that Zachary had acted with the apparent authority of CRS. (Tr. Hr'g. FLW 10/30/07 at p. 50; Doc. No. 25.) This Court now applies a FED. R. CIV. P. 56 standard to the record as it now exists post-discovery. In New Jersey, to prevail on a claim of apparent authority, a plaintiff must establish the following elements:

> (1) that the principal has manifested his consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority; (2) that the third person knew of the facts and, acting in good faith, had reason to believe, and did actually believe, that the agent possessed such authority; and (3) that the third person, relying on such appearance of authority, has changed his position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal.

*Licette Music Corp. v. Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, P.A.*, 2009 N.J. Super. Unpub. LEXIS 1861 (App. Div. July 16, 2009) (quoting *Staron v. Weinstein*, 305 N.J. Super. 236, 240 (App. Div. 1997). The Court concludes that the evidence presented in this case provides no basis for a reasonable finder of fact to conclude that either the first or third elements of apparent agency have been established.

As noted above, the first element of apparent agency is that, "the principal has manifested his consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority . . . ." As the Court has already stated with regard to actual authority,

the record in this case is devoid of evidence that anyone in any capacity at CRS "manifested consent" or "knowingly permitted" Zachary to represent Roggio in either the West Belt transaction or any other matter after CRS withdrew as Roggio's counsel in the *Haught* matter. That determination is not cursory, but further analysis has no utility as the Court cannot delve into a detailed discussion of evidence that simply does not exist in the record.  In sum, viewing the record and drawing all inferences in the light most favorable to Roggio, the Court concludes that no reasonable finder of fact could decide that the first element of apparent agency has been established.  That conclusion alone is sufficient to grant CRS's motion for summary judgment.

However, Roggio has also failed to establish the third element of apparent agency which requires that, "the third person, relying on such appearance of authority, has changed his position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal."  Indeed, beyond Roggio's failure to provide any evidence that he relied upon Zachary's association with CRS, a review of Roggio's Amended Complaint indicates that he has not even alleged the existence of this element and does not refer to any action that Roggio took based upon Zachary's association with CRS that he might not have taken otherwise.  (Am. Compl. ¶¶ 1-9; Doc. No. 139.) Once again, the Court cannot analyze evidence that simply does not exist in the record.   In sum, viewing the record and drawing all inferences in the light most favorable to Roggio, the Court concludes that no reasonable finder of fact could decide that the third element of the apparent agency analysis has been established.  That conclusion alone is sufficient to grant CRS's motion for summary judgment.

In sum, having viewed the underlying facts and drawn all reasonable inferences in favor of Roggio, the Court concludes that no reasonable finder of fact could conclude that Zachary

acted with either the actual or apparent authority of CRS at any relevant time.  As such, CRS cannot be held vicariously liable for any relevant act taken by Zachary.  Additionally, because Zachary was not an agent of CRS, and CRS had no relationship with Roggio after February 13, 2002, CRS cannot, as a matter of law, have any fiduciary duty to Roggio – and therefore CRS cannot, as a matter of law, breach any fiduciary duty to Roggio.  Thus, the Court will grant CRS's motion and enter summary judgment in favor of CRS on Count VIII of Roggio's Amended Complaint.[7]

### III.   CONCLUSION

For the foregoing reasons, CRS's motion for summary judgment will be GRANTED.  In light of this decision, the Court shall order CRS terminated as a party to this litigation.  An appropriate form of order accompanies this memorandum opinion.

Dated: March 12, 2010

>                 /s/ Garrett E. Brown, Jr.
>         GARRETT E. BROWN, JR., U.S.D.J.

---

[7] As a final point, the Court notes that the docket indicates Roggio failed to submit an affidavit of merit in support of his professional malpractice claim against CRS as required by New Jersey law.  N.J.S.A. § 2A:53A-27; see also *Cornblatt v. Barow*, 303 N.J. Super. 81, 86 (App. Div. 1997), *rev'd on other grounds*, 153 N.J. 218 (1998).  Because Roggio expressly argues that New Jersey law should apply to his claims against CRS, Roggio's apparent failure to submit an affidavit of merit may have been a further reason why his claim could not proceed.  The parties, however, did not argue the point, and because Roggio's claim failed on the merits, the Court declines to raise the issue *sua sponte*.