**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY Z. EMMANOUIL, EUGENIA K. EMMANOUIL, and WEST BELT AUTO SUPPLY, INC. <br><br> Plaintiffs, <br><br> v. <br><br> VINCENT VICTOR ROGGIO, CALLIE LASCH ROGGIO, NOVED REAL ESTATE CORP., and JEAN WAKLAIS <br><br> Defendants. | Civil Action No. 06-1068 (JAP) <br><br> Consolidated Actions <br><br> **MEMORANDUM OPINION** |
| VINCENT ROGGIO, <br><br> Plaintiff, <br><br> v. <br><br> ANTHONY Z. EMMANOUIL, EUGENIA K. EMMANOUIL, and WEST BELT AUTO SUPPLY, INC. <br><br> Defendants. | |

**PISANO, Judge**

This matter is before the Court upon a Motion for a Preliminary Injunction brought by Plaintiff West Belt Auto Supply, Inc. ("West Belt"). (DE 355.) Plaintiffs Anthony Z. Emmanouil, Eugenia K. Emmanouil, and West Belt Auto Supply, Inc. (collectively "Plaintiffs")

oppose the Motion.[1] (DE 356.) The Court held oral argument on June 18, 2012. For the reasons below, the Motion for a Preliminary Injunction will be denied.

I.   BACKGROUND

The litigation involving Anthony Emmanouil, Eugenia Emmanouil (collectively "Emmanouils"), and Defendant Vincent Roggio ("Roggio") has endured for over eight years and spawned several related lawsuits. This case involved a series of transactions between the Emmanouils and Roggio and culminated in a two-week jury trial in August of 2010. The jury found that Roggio (1) breached his fiduciary duty to the Plaintiffs; (2) breached the contract for the sale of West Belt; (3) breached a mortgage contract under which he was to repay $850,000 to Anthony Emmanouil; (4) was unjustly enriched when he retained Plaintiffs' money without repayment; and (5) failed to prove any of his counterclaims against Plaintiffs. (Verdict Sheet, DE 274.) Chief Judge Garrett E. Brown, Jr.[2] entered judgment on October 1, 2010 in favor of the Emmanouils and West Belt and against Roggio in the amount of $1,222,311. (DE 293.)

The Court addressed the parties' post-trial filings in an opinion issued April 4, 2011. (Memorandum Opinion, DE 322.) First, the Court denied Roggio's motion for judgment as a matter of law or a new trial and denied his motion to stay execution of the judgment. (Id. at 3-6.) One of Roggio's arguments for a new trial was that West Belt was misaligned as a party in the case. (Id. at 5-6.) Roggio contended that West Belt should not have been a party plaintiff against him because he purchased a 90% ownership in West Belt. (Id. at 6.) Roggio concluded that it was improper for his own company to be aligned against him, and as a result, the judgment

---

[1] The admittedly confusing alignment of the parties moving for and opposing the Motion for a Preliminary Injunction will be explained below.
[2] This case was transferred from Chief Judge Brown to Judge Joel A. Pisano on January 31, 2012 after all post-trial motions were decided and after Roggio filed his notice of appeal. (DE 347.)

could not be enforced since he owned that portion of the judgment belonging to West Belt. (Id.) The Court, however, held that West Belt was properly aligned, reasoning that Roggio named West Belt as an adverse party and actively pursued several causes of action against the company. (Id.)

Next, the Court dismissed a new complaint filed by Roggio on October 13, 2010 in the Southern District of Texas and transferred to the District of New Jersey (hereinafter "'11 Complaint"). (Id. at 10-12; Civ. Action No. 11-1171, DE 1.) The '11 Complaint sought a declaratory judgment that Roggio owns 90% of West Belt and a preliminary injunction enjoining the Emmanouils from transferring any of West Belt's assets. (Civ. Action No. 11-1171, DE 1.) The Court held that the '11 Complaint was barred by the doctrine of res judicata:

> [T]he jury squarely addressed the contract between Anthony Emmanouil and Roggio for the sale of West Belt, and decided that Roggio breached that contract, while Anthony Emmanouil did not. The issue presented by the '11 Complaint, therefore, has been decided by a jury, and any additional litigation on this point is unnecessary and must be disallowed.

(Memorandum Opinion, DE 322 at 11-12.)

Finally, the Court granted Plaintiffs' motion for attorney's fees and costs and prejudgment interest. (Id. at 6-10.) The amended judgment in favor of Plaintiffs and against Roggio totals $1,945,199. (Id. at 6-10.) The judgment was made final on April 8, 2010. (Amended Order Entering Judgment, DE 324.)

Roggio filed a notice of appeal of, among other things, the Court's denial of his post-trial motion for judgment as a matter of law or a new trial. (Notice of Appeal, DE 329.) That appeal is currently pending before the Third Circuit. Roggio did not appeal the Court's dismissal of the '11 Complaint. (See Docket Sheet, Civ. Action No. 11-1171.)

In the mean time, the Court issued a Writ of Execution for levy upon Roggio's bank account at Columbia Bank, and it was returned executed on January 23, 2012. (DE 348.) The Court then entered an order on May 29, 2012 granting Plaintiffs' motion to compel the turnover of funds up to $1,945,119 by Columbia bank held in the name of Roggio in order to satisfy the judgment. (DE 353.)

Roggio's counsel in a related action,[3] Mr. David Messer, Esq., entered an appearance on behalf of Plaintiff West Belt and filed a Motion for Preliminary injunction on June 14, 2012. (DE 354.) Both Mr. Messer and Plaintiffs' counsel McElroy, Deutsch, Mulvaney & Carpenter, LLP (hereinafter "McElroy") have entered appearances on behalf of West Belt. McElroy entered an appearance on behalf of West Belt on October 16, 2006, and the firm represented West Belt before, during, and after trial. Nevertheless, still claiming that he is "the sole individual having authority to control West Belt's affairs," Roggio purports to authorize West Belt to retain Mr. Messer as counsel. (DE 355-11.)

As a result, West Belt, ostensibly with dueling legal representation, both requests a preliminary injunction and simultaneously opposes that preliminary injunction. The Motion filed by Mr. Messer, purportedly on behalf of West Belt, seeks a preliminary injunction to (1) restrain and halt all collection efforts by any named plaintiff on account of the judgment awarded in this action; (2) restrain and halt the Emmanouils from any and all efforts to offer for sale or to sell any interests in or assets of West Belt; (3) disqualify McElroy as counsel to the Emmanouils and West Belt; and (4) restrain the Emmanouils from exercising or attempting to exercise any

---

[3] Based upon post-judgment discovery in this case and after being unable to secure payment of the judgment, the Emmanouils filed a Verified Complaint on September 26, 2011 alleging, inter alia, fraudulent conveyance and transfer, conspiracy, debtor false oath to creditor, unjust enrichment, and conversion. (Civ. Action No. 11-5575, DE 1.) West Belt is not a party to Civil Action No. 11-5575.

authority or control of and over the affairs of West Belt.  (DE 355.)  West Belt and the Emmanouils, through counsel McElroy, oppose the Motion.  (DE 356.)[4]

## II.     LEGAL STANDARD AND ANALYSIS

In evaluating a motion for preliminary injunctive relief, a court must consider whether: "(1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting an injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest."  NutraSweet Co. v. Vit-Mar Enterprises, Inc., 176 F.3d 151, 153 (3d Cir. 1999) (quoting Maldonado v. Houstoun, 157 F.3d 179, 184 (3d Cir. 1998)).  Preliminary injunctive relief is an extraordinary remedy that "should issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief."  American Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994).

Roggio contends that a preliminary injunction is necessary because West Belt's interest in the judgment is adverse to the Emmanouils' interest since the Emmanouils, as individuals, are not entitled to any portion of the judgment belonging to West Belt.  (Moving Br. at 14; DE 355-1.)  The premise of this argument is that Roggio, and not the Emmanouils, own a controlling interest in West Belt.  Ownership of West Belt, however, is not something the Court will address for the simple reason that a jury has already determined that Roggio does not own West Belt.

To begin, Roggio is estopped from raising the issue.  The dispute over the contract for sale of West Belt was an issue decided by the jury, and the Court found it supported by a preponderance of credible evidence.  Further, the Court on several occasions has addressed the

---

[4] Throughout the remainder of this Memorandum Opinion, the Court will refer to the Motion for Preliminary Injunction as being brought by Roggio, as it is he who purports to authorize the company to retain counsel and file the Motion.

proper party alignment of West Belt. As such, collateral estoppel operates to bar the parties in this case from addressing those issues again. Collateral estoppel is appropriate where "(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment and (5) the party against whom the doctrine is asserted was a party to or in privity with the earlier proceedings." Sacharow v. Sacharow, 177 N.J. 62, 76 (2003). All elements of collateral estoppel are present here, although the issue was decided not in a different proceeding but in this same (since closed) proceeding. The ownership of West Belt was central to the claims raised by the same parties, and this suit ended with the jury finding in the Emmanouils' favor. Indeed, Chief Judge Brown found that the '11 Complaint, which raises the very same issue as in the instant Motion, was barred by the related doctrine of res judicata.[5] Accordingly, the issue of West Belt's ownership cannot be raised yet again after the Court entered final judgment closing the case.

Nor could this Court address ownership of West Belt even if it wanted to since the Court no longer has jurisdiction over the aspects of the case raised in the Motion. Roggio has made clear his discontent with the jury's verdict, the denial of his post-trial motions, and the dismissal of the '11 Complaint. But the relief he seeks must come in the form of an appeal. In fact, Roggio did appeal the denial of his post-trial motions, which include the issues of the contract to

---

[5] In a letter to the Court dated June 19, 2012, Roggio takes issue with several decisions in this case including Chief Judge Brown's decision to dismiss the '11 Complaint. The '11 Complaint, which raised the issue of West Belt's ownership, was dismissed based on res judicata. Roggio protests, however, that "[w]hen Judge Brown later wrote in his April 4, 2011 Opinion that the jury had decided the ownership of West Belt, Judge Brown erred by misrepresenting the record." (DE 359 at 5.) To the extent Roggio believes Judge Brown erred, he should have appealed the dismissal of the '11 Complaint rather than raise it in a Motion for a Preliminary Injunction over a year later.

purchase West Belt and the alignment of West Belt as a party.  However, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (U.S. 1982).  Thus, this Court does not have jurisdiction to address any of the issues Roggio raises as those issues are now before the Third Circuit.[6]

Finally, Roggio requests that McElroy be disqualified, arguing the firm violated the New Jersey Rules of Professional Conduct ("RPCs") through their representation of both the Emmanouils and West Belt.  The moving party bears the heavy burden of proving that disqualification is appropriate where that party alleges the RPCs have been violated.  See Maldonado v. New Jersey, 255 F.R.D. 120, 136-37 (D.N.J. 2004).

Here, Roggio alleges that McElroy has a conflict of interest in simultaneously representing West Belt and the Emmanouils in this case.  That type of conflict is addressed by RPC 1.7(a),[7] which provides the following:

> [A] lawyer should not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

---

[6] For the same reason, the Court does not have jurisdiction to address many of the issues raised in Roggio's June 19, 2012 letter to the Court.  While it is clear that Roggio assigns multiple errors in the findings of fact and conclusions of law in this case, the proper avenue is an appeal.

[7] In his brief, Roggio asserts a violation of RPC 1.9(a).  But that rule addresses duties to former clients, whereas here, West Belt and the Emmanouils are current clients of McElroy.  Therefore, in its analysis, the Court will apply RPC 1.7(a), which addresses concurrent conflicts of interest.

RPC 1.7(a). Roggio concludes that Emmanouils' and West Belt's interests are directly adverse. But this argument assumes that Roggio is a 90% owner of West Belt. Again, however, the Court will not assume that fact to be true since the jury found Roggio to be in breach of his contract to purchase West Belt. Moreover, the Court does not have jurisdiction to address ownership of West Belt in light of Roggio's appeal.

The Court, in sum, finds that a preliminary injunction is inappropriate. In effect, Roggio, purportedly on behalf of West Belt, has requested a trial court to undertake appellate review of matters decided by it and the jury. However, jurisdiction to conduct appellate review of the matters decided in this case lies with the Third Circuit. Further, unless and until a court decides that Roggio is a 90% owner of West Belt, McElroy is not in violation of the RPCs, and consequently, there is no basis to disqualify the firm.

### III.   CONCLUSION

For the reasons above, the Motion for a Preliminary Injunction is denied. An appropriate order is filed herewith.

Dated: June 21, 2012

           /s/ JOEL A. PISANO
           United States District Judge