NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY Z. EMMANOUIL, EUGENIA K. EMMANOUIL, and WEST BELT AUTO SUPPLY, INC., | |
| Plaintiffs, | |
| v. | |
| VINCENT VICTOR ROGGIO, CALLIE LASCH ROGGIO, NOVED REAL ESTATE CORP., and JEAN WAKLAIS, | Civil Action No. 06-cv-1068 (JAP) |
| Defendants. | **OPINION** |
| VINCENT ROGGIO, | |
| Plaintiff, | |
| ANTHONY Z. EMMANOUIL, EUGENIA K. EMMANOUIL, and WEST BELT AUTO SUPPLY, INC., | |
| Defendants. | |

PISANO, District Judge

This matter is before the Court upon Defendant/Plaintiff Vincent Victor Roggio's ("Roggio") Motion for the Recusal of the Honorable Joel A. Pisano [docket # 378]. The Court has considered the parties' submissions and reaches its decision without oral argument. *See* Fed. R. Civ. P. 78. The motion will be denied because Roggio fails to show that a reasonable person, with knowledge of all the facts, would conclude that Judge Pisano's impartiality might reasonably be questioned.

1

## I. BACKGROUND

The litigation of this matter has been ongoing for several years, and although styled as a Motion for Recusal, the motion is just another example of Roggio's attempt to litigate issues that have already been decided. Plaintiffs Anthony Z. Emmanouil, Eugenia K. Emmanouil, and West Belt Auto Supply, Inc. ("West Belt") (collectively "Plaintiffs") filed the initial complaint on March 7, 2006 [docket # 1[1]].

On December 23, 2008, Roggio filed a Motion to Disqualify McElroy, Deutsch, Mulvaney & Carpenter, LLP ("MDMC"), Anthony Z. and Eugenia K. Emmanouil's (collectively the "Emmanouils") counsel, because it allegedly violated Rule of Professional Conduct ("RPC") 8.4 by receiving confidential information protected by the attorney-client privilege from Roggio's former counsel, the Emmanouil's son, and used this information to litigate the case against Roggio [docket # 115]. This motion was denied on May 5, 2009 [docket # 130, 131]. The Magistrate Judge temporarily sealed the exhibit containing the allegedly confidential information and gave Roggio until May 22, 2009 to move to permanently seal it [docket # 131]. On May 22, 2009, Roggio filed a motion to permanently seal the exhibit and appealed the decision denying the Motion to Disqualify MDMC [docket # 141, 144]. The Magistrate Judge granted the motion to seal on July 1, 2009 [docket # 157]. This Court affirmed the denial of the Motion to Disqualify MDMC on November 23, 2009 [docket # 193, 194].

Subsequently, on January 20, 2010, Roggio filed a complaint in the Superior Court of New Jersey, alleging defamation and violation of his right to privacy due to the publication of the exhibit; Defendants MDMC and the Emmanouils removed the case to this Court. [*Roggio v.*

---

[1] All docket numbers, unless otherwise specified, refer to this initial action, 06-1068.

*MDMC*, Civil Action No. 10-777, docket # 1]. Roggio then filed a Motion to Remand the case to the Superior Court of New Jersey, and Defendants filed a Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) [10-777, docket # 5, 6]. On April 14, 2010, this Court granted Defendants' Motion to Dismiss and denied Roggio's Motion to Remand [10-777, docket # 26, 27]. Regarding whether MDMC should be disqualified, the Court determined that "the publication of Roggio's criminal history was clearly made in a judicial proceeding by litigants authorized to do so" because "the information was not subject to a sealing order at the time of its publication" [10-777, docket #26, p. 6–7]. Furthermore, MDMC submitted the exhibit to show that "it did not receive information from the Emmanouils' son that was protected by the attorney-client privilege" since "it had obtained the information from a filing made earlier in the District Court action by Roggio's counsel." *Id.* at 7. On February 28, 2011, the Third Circuit affirmed this Court's decision [10-777, docket # 30].

The original dispute involving the parties resulted in a two week jury trial, which commenced on August 24, 2010, and ended on September 3, 2010 [docket # 265–273]. The jury found that Roggio (1) breached a fiduciary duty owed to the Plaintiffs; (2) breached the contract for the sale of West Belt; (3) breached the mortgage contract under which he was required to repay $850,000 to Anthony Emmanouil; and (4) was unjustly enriched by retaining Plaintiffs' money without repayment [docket # 274]. The jury awarded Plaintiffs damages in the amount of $1,222,311 [docket # 274]. On September 10, 2010, Plaintiffs filed a Motion for Attorney's Fees and Pre-Judgment Interest [docket # 278]. On October 1, 2010, this Court entered judgment in favor of Plaintiffs in the amount of $1,222,311 [docket # 293].

On April 4, 2011, the Court denied Roggio's post-trial motions, which included a Motion for Judgment NOV, a Motion for New Trial, and a Motion to Stay execution of the judgment,

and granted Plaintiffs' Motion for Attorneys Fees [docket # 323]. Roggio argued, *inter alia*, that there should be a new trial because West Belt was misaligned as a party since he owned a 90% interest in it; the Court denied the motion because, *inter* alia, West Belt was a properly aligned party since Roggio pursued several causes of action against it. In addition, the Court dismissed a new complaint, which was originally filed on October 13, 2010 in the Southern District of Texas and was transferred to the District of New Jersey [*see* Civ. Action No. 11-1171, docket # 1]. In that Complaint, Roggio sought a declaratory judgment that he owned 90% of West Belt and a preliminary injunction, enjoining the Emmanouils from transferring any of West Belt's assets. However, the Court held that the Complaint was barred by res judicata since "the jury squarely addressed the contract between Anthony Emmanouil and Roggio for the sale of West Belt, and decided that Roggio breached the contract"; therefore, "any additional litigation on this point is unnecessary and must be disallowed" [docket # 322]. Moreover, the Court granted Plaintiffs' Motion for Attorney's Fees and Costs and directed Plaintiffs to submit an amended form of judgment [docket # 322]. On April 8, 2011, the Court entered an amended judgment in the amount of $1,945,119 [docket # 324].

On April 27, 2011, Roggio filed an appeal from this Court's judgment entered on October 1, 2010, the amended judgment entered on April 8, 2011, the November 23, 2009 order denying the Motion to Disqualify MDMC, and the April 4, 2011 judgment denying his Motion for Judgment NOV and for a New Trial [docket # 329]. On September 24, 2012, the Third Circuit affirmed this Court's decisions but modified the award of attorney's fees [docket # 380].

While this appeal was pending, on June 14, 2012, Roggio's counsel in a related action[2] entered an appearance on behalf of West Belt and filed a Motion for Preliminary Injunction, seeking: (1) to restrain and stop all collection efforts by any plaintiff on account of any judgment; (2) restrain the Emmanouils from selling or transferring their ownership interest in West Belt; (3) disqualifying MDMC from representing any party in this action; and (4) restrain the Emmanouils "from exercising or attempting to exercise any authority or control of and over the affairs and management of West Belt . . ." [docket # 355-2]. On June 21, 2012, the Court denied the Motion for Preliminary Injunction, determining that Roggio was estopped from raising the issue of the ownership of West Belt because "a jury . . . already determined that Roggio does not own" it [docket # 361]. The Court declared that Roggio, "purportedly on behalf of West Belt, has requested a trial court to undertake appellate review of matters decided by it and the jury. However, jurisdiction to conduct appellate review of the matters decided in this case lies with the Third Circuit. Further, unless and until a court decides that Roggio is a 90% owner of West Belt, McElroy is not in violation of the RPCs, and consequently, there is no basis to disqualify the firm."[3] *Id.*

Roggio moved for another Preliminary Injunction and Order to Show Cause on August 1, 2012 [docket # 369]. That same day, the Court denied the motion because it requested relief identical to the relief requested in the June 14, 2012 motion [docket # 371]. Roggio moved for reconsideration on August 15, 2012 [docket # 373].

---

[2] Civil Action 11-5575. Roggio's counsel entered an appearance on behalf of West Belt because Roggio claimed he owned 90% of it and therefore, could authorize West Belt to retain counsel. MDMC also entered an appearance on behalf of West Belt.

[3] Roggio appealed this decision, but the Third Circuit dismissed the appeal for failure to pay the filing fee [docket # 363, 368].

On August 23, 2012, this Court denied the Motion for Reconsideration [docket #376, 377]. The Court outlined the Roggio's arguments: (1) the Court has not addressed his argument that the Emmanouils and McElroy "admitted before and during trial that [he] was a 90% owner of West Belt"; (2) the Court has not addressed "an alleged conflict of interest held by" MDMC because the alleged violations of RPC 1.7 are not barred by res judicata; (3) the Court has not addressed the publication of Roggio's criminal history by the Emmanouils and MDMC, which is a violation of privacy and the attorney-client privilege; and (4) the Court has not considered that the "Emmanouils and McElroy seek to be awarded despite an irrefutable record of repeated lawlessness to taint and prejudice these proceedings and deflect from the paucity of their case" [docket # 376, p. 7-8]. After outlining these arguments, the Court determined that "each of these grounds has been raised and considered by this Court either in this case, in related civil actions, or on appeal . . . , and Roggio does no more than restate his disagreement with various decisions by the jury and by the Court." *Id.* at 8. The Court explained that "the contract for the sale of West Belt and the claims related to" it "were considered and decided by the jury and again addressed by this Court through post-trial motion practice . . . ." *Id.* at 8-9. In addition, the Court explained that it addressed the disqualification of MDMC in its June 21, 2012 Opinion and held that MDMC did not violate Roggio's privacy regarding the publishing of his criminal record in its April 14, 2010 Opinion. *Id.* at 9. Moreover, the Court declared that it denied the Motion for Preliminary Injunction and Order to Show Cause on August 1, 2012, because of res judicata since the motion "was identical to relief requested and denied in the June 21, 2012 order." *Id.* at 10. Furthermore, the Court decided that reconsideration was improper because Roggio sought "only to reargue findings of fact and conclusions of law that were made either in this case or in his case against McElroy for violations of privacy and defamation." *Id.* Lastly, the Court

warned that it could not and would not "continue to entertain Roggio's unrelenting disagreement . . . with the decisions made by the jury, by the Court, and by the Third Circuit" and submitting "duplicative and/or frivolous motions, applications, or other requests . . . may result in the imposition of sanctions, which could include restrictions on future filing without the prior, written approval of the Court." *Id.* at 11.

Subsequently, Roggio moved for the recusal of Judge Pisano, arguing that the Judge should be recused because of his "willingness to ignore the Truth, Sealing Orders, Judicial Admissions, Judicial Estoppel, Felonious Agreements, False Statements to the FBI, Unwarranted Violations of Privacy and the Clear Binding Precedents of both the Supreme Court of the United States and the New Jersey Supreme Court . . . " [docket # 378-1 p. 3]. In support of his motion, which is presently at issue, Roggio relies on two of this Court's Opinions, dated August 23, 2012 and April 14, 2010. Regarding the August 23, 2012 Opinion, Roggio disagrees with the Court's statement that the issues regarding the "sale and ownership of West Belt and disqualification of McElroy have been denied" due to res judicata. *Id.* at 5. Additionally, Roggio asserts that the April 14, 2010 Opinion is defamatory. *Id.* at 12.

## II.  DISCUSSION

### A.  Recusal Standard

The "decision of whether to recuse lies within the discretion of the district judge." *Smith v. Manasquan Sav. Bank*, 2012 WL 4339561, *3 (D.N.J. Sept. 20, 2012); *see also United States v. Wilensky*, 757 F.2d 594, 599–600 (3d Cir. 1985). A federal judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The purpose of "§ 455(a) is to promote confidence in the judiciary by avoiding even the

appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988). In addition, a judge must be disqualified if he "has a personal bias or prejudice concerning a party . . . ." 28 U.S.C. § 455(b)(1).

To determine whether a judge should recuse himself under § 455(a), a court must examine "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Int'l Ltd.*, 368 F.3d 289, 296 (3d Cir. 2004); *see, e.g.*, *Sao Paulo State of Federative Republic of Brazil v. Am. Tobacco Co., Inc.*, 535 U.S. 229, 232–33 (2002); *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000). This "is an objective inquiry that considers not only whether a judge is actually impartial but whether there is an appearance of impartiality." *Smith*, 2012 WL 4339561, at *3; *see also United States v. Kennedy*, 682 F.3d 244, 258 (3d Cir. 2012) (stating the test is "[a]n objective inquiry . . . [and] is not concerned with the question whether a judge actually harbors bias against a party"). In evaluating whether a judge has violated § 455(b)(1), meaning "a party claims that a judge should recuse because of a personal bias or prejudice," the party must show "that such bias or prejudice is grounded in extrajudicial sources, such as personal animus, rather than judicial actions that can be corrected on appeal." *Smith*, 2012 WL 4339561, at *4.

### B. Roggio Does Not Establish That Recusal Is Warranted

Roggio's motion is denied because a reasonable person, with knowledge of all the facts in this case, would not conclude that Judge Pisano's impartiality may reasonably be questioned. One with knowledge of all the facts would see this motion as another effort by Roggio to relitigate issues already decided. Indeed, Roggio's motion focuses on his disagreement with this Court's decisions on August 23, 2012 and April 14, 2010, particularly with the Court's denial of

the Motion to Disqualify MDMC and the denial of his motions associated with the sale and ownership of West Belt. First, Roggio filed the Motion to Disqualify MDMC on December 23, 2008, the Magistrate Judge denied the motion on May 5, 2009, and this Court affirmed that decision on November 23, 2009. This Court explained why MDMC would not be disqualified in its April 14, 2010 Opinion, determining that the publication of the document that allegedly contained attorney-client privileged information was authorized because "the information was not subject to a sealing order at the time of its publication." The Third Circuit affirmed on February 28, 2011. Regarding the issues surrounding the sale and ownership of West Belt, a jury found that Roggio breached the contract for sale on September 3, 2010, and this Court entered judgment in Plaintiffs' favor on October 1, 2010. On April 4, 2011, this Court denied Roggio's post-trial motions, which included a Motion for Judgment NOV and a Motion for a New Trial. An amended judgment was entered on April 8, 2011. Recently, on September 24, 2012, the Third Circuit affirmed these decisions. Moreover, on June 21, 2012, the Court denied a Motion for a Preliminary Injunction, declaring that Roggio was estopped from raising the issue of the ownership of West Belt because the jury already determined that he did not own the company. Roggio moved for reconsideration of this decision, and on August 23, 2012, this Court denied the motion because the arguments concerning the ownership of West Belt and the disqualification of MDMC have "been raised and considered by this Court . . . and Roggio does no more than restate his disagreement with various decisions by the jury and by the Court." Here, Roggio has not established that a reasonable person would question Judge Pisano's impartiality; instead, he again disagrees with this Court's decisions that have been affirmed by the Third Circuit. This is not a basis for recusal. *See Toolasprashad v. Grondolsky*, 570 F. Supp. 2d 610, 645 (D.N.J. 2008) (stating "the Supreme Court has made it clear that '[adverse] rulings

alone almost never constitute a valid basis' for recusal"); *see also SecuraComm Consulting, Inc. v. Securacom, Inc.*, 224 F.3d 273, 278 (3d Cir. 2000) (stating "a party's displeasure with legal rulings does not form an adequate basis of recusal").

Furthermore, the Motion for Recusal is improper because it is an obvious attempt by Roggio to re-hash the same arguments until he finds a ruling in his favor or evades satisfaction of the judgment against him. "[I]n assessing . . . [the judge's] impartiality, [the] judge . . . must be alert to avoid the possibility that those who would question [the judge's] impartiality are in fact seeking to avoid the consequences of his expected adverse decision." *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 162 (3d Cir. 1993). "Litigants . . . are not entitled to judges of their own choice." *Id.* The purpose of recusal "is *not* to enable an unhappy litigant to judge-shop until he finds a judge that rules in his favor." *Twist v. U.S. Dept. of Justice*, 344 F. Supp. 2d 137, 142 (D.D.C. 2004), *aff'd sub nom. Twist v. Gonzales*, 171 Fed. Appx. 855 (D.C. Cir. 2005).

Accordingly, this Court will deny the Motion for Recusal because a reasonable person, with knowledge of all the facts, would not conclude that the Judge's impartiality might reasonably be questioned.

### III. CONCLUSION

For all the reasons above, this Court will deny the Motion for Recusal.

/s/ Joel A. Pisano
JOEL A. PISANO
United States District Judge

Dated: January 29, 2013